UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHANE A. T.,
    *Plaintiff*,

v.

LELAND DUDEK, Acting Commissioner of
Social Security Administration,
    *Defendant*.

No. 3:24-cv-0470 (KAD)

**ORDER GRANTING COMMISSIONER'S MOTION TO AFFIRM
AND DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON PLEADINGS**

Plaintiff, Shane A.T., brings this administrative appeal pursuant to 42 U.S.C. § 405(g). He appeals the final decision of the Acting Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") benefits under Title XVI and Childhood Disability Benefits ("CDB") under Title II of the Social Security Act. Plaintiff seeks to reverse the decision or alternatively a remand for further proceedings. The Commissioner has crossed moved to affirm the decision denying benefits. For the reasons set forth below, the motion to affirm the Commissioner's decision is GRANTED and Plaintiff's motion to reverse or alternatively for a remand is DENIED.

**STANDARD OF REVIEW**

A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). In addition, a claimant must establish that their physical or mental impairment or

1

impairments are of such severity that they are not only unable to do their previous work but "cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

In determining whether a claimant is disabled, the Social Security Administration engages in a five-step sequential evaluation process, examining:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving the case at Steps One through Four; the burden shifts at Step Five to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The fourth sentence of Section 405(g) of the Act provides that a "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Absent a legal

error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff, born prematurely on August 10, 1993, has a history of cognitive, developmental, and social difficulties. *See* Doc. #19-1 at 7. He was diagnosed in early childhood with autism spectrum disorder (ASD) and attention deficit hyperactivity disorder (ADHD). *Id.* at 8. He consequently received various accommodations throughout his education—including special education services, 504 plans under Section 504 of the federal Rehabilitation Act, extra time on examinations, and teacher monitoring for missing homework. *See* Doc. #12 at 403, 420, 527-33, 558 (Tr. 394, 411, 518-24, 549).[1] Despite these supports, he exhibited significant social and functional challenges, including impaired social skills and pragmatics of language, poor eye contact, distractibility, impulsivity, and difficulty sustaining attention. *Id.* at 603-06, 612-13 (Tr. 594-97, 603-04).

Plaintiff filed applications for CDB and SSI on August 14, 2014, alleging disability as of September 1, 2008. *Id.* at 290, 300 (Tr. 281, 291). The claims were denied initially on March 19, 2015, *id.* at 213 (Tr. 204), and again upon reconsideration on October 1, 2015, *id.* at 226 (Tr. 217). He requested a hearing, which was held on January 4, 2017, *id.* at 55 (Tr. 46), and the Administrative Law Judge (ALJ) ultimately issued an unfavorable decision. After Plaintiff appealed to this Court, the government moved for entry of judgment vacating the ALJ's decision

---

[1] Page references to the administrative record/transcript are to the pagination generated on the Court's CM/ECF docket. For ease of reference, a citation to the internal Social Security Administration transcript number is provided in the form (Tr. *n*).

3

and, with Plaintiff's consent, the matter was remanded on February 8, 2019 for further proceedings. Doc. #19-1 at 2.

Post-remand, the assigned ALJ held multiple hearings. Plaintiff appeared at all but one but was represented by counsel at all times. Also post-remand, in August 2019, Dr. Anthony Campagna conducted a consultative psychological evaluation. In the body of his report, Dr. Campagna described marked limitations in Plaintiff's memory, attention, social interaction, and adaptability, arguably suggesting that Plaintiff met Listings 12.10 and 12.11. *See* Doc. #12 at 1329-31 (Tr. 1320-22). In the concluding "Medical Source Statement," of the report however, he assessed only moderate limitations in these same domains. *Id.* at 1331-32 (Tr. 1322-23). Plaintiff repeatedly requested an opportunity to cross-examine Dr. Campagna to reconcile or question these inconsistencies. *Id.* at 1235-50, 1290-91 (Tr. 1226-41, 1281-82). The ALJ denied those requests, citing feasibility and lack of necessity. *Id.* at 657, 732, 810 (Tr. 648, 723, 801).

The ALJ instead arranged for the testimony of Dr. Billings Fuess, a psychological medical expert, who had been asked to review the entire file prior to the hearings in June and December 2023. Having done so, Dr. Fuess opined that Plaintiff's impairments resulted in moderate limitations in the four domains and therefore did not meet or equal the applicable listings. *Id.* at 767-69 (Tr. 758-760). On January 18, 2024, the ALJ issued a second unfavorable decision. *See id.* at 654. (Tr. 645).

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 9, 2011—the date he attained age 18. Doc. #12 at 660 (Tr. 651).

At Step Two, the ALJ found that Plaintiff had two severe impairments: attention deficit hyperactivity disorder and autism spectrum disorder. *Id.* (Tr. 651). These impairments were determined to significantly limit Plaintiff's ability to perform basic work activities.

4

At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment, including Listings 12.10 (ASD) and 12.11 (neurodevelopmental disorders). *Id.* at 661-62 (Tr. 652-53). As discussed further below, although Dr. Campagna's narrative summary indicated marked limitations in several functional areas, the ALJ, inter alia, credited the more moderate Medical Source Statement and the consistent testimony of Dr. Fuess. *Id.* at 666, 767-69 (Tr. 657, 758-60).

The ALJ then assessed that Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels, with significant nonexertional limitations. Plaintiff would be restricted to simple, routine, and repetitive tasks, with only occasional interaction with coworkers and supervisors, and no interaction with the public. *Id.* at 662-63 (Tr. 653-54). In formulating the RFC, the ALJ reviewed Plaintiff's subjective reports, longitudinal treatment history, and opinion evidence, but found that the level of limitation alleged was not fully supported by objective clinical findings, treatment gaps, or medical opinions. *Id.* at 662-66 (Tr. 653-57).

At Step Four, the ALJ found that Plaintiff had no past relevant work. *Id.* at 666 (Tr. 657).

At Step Five, the ALJ relied on the testimony of a vocational expert, who testified that a hypothetical individual with Plaintiff's RFC could perform jobs such as cleaner and store laborer, and that such jobs exist in significant numbers in the national economy. *Id.* at 666-67 (Tr. 657-58). Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. This timely appeal followed.

Plaintiff now seeks review in this Court pursuant to 42 U.S.C. § 405(g), and the Commissioner has moved to affirm.

## DISCUSSION

Plaintiff raises three principal challenges to the ALJ's decision: (1) that the ALJ erred at Step Three by finding that Plaintiff's impairments did not meet or equal the Listings;[2] (2) that the ALJ failed to develop the record by denying Plaintiff's request to subpoena Dr. Campagna; and (3) that the ALJ's RFC determination and Step Five finding were not supported by substantial evidence. Each argument is addressed in turn.

*Listings 12.10 or 12.11*

At Step Three, the ALJ considered whether Plaintiff's impairments met or equaled Listings 12.10 (autism spectrum disorder) or 12.11 (neurodevelopmental disorders). To satisfy either Listing, Plaintiff must show either one "extreme" or two "marked" limitations in the "Paragraph B" function domains: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.10(B), 12.11(B). The ALJ found marked limitation in the domain of "interacting with others" but only moderate limitations with respect to the remaining three function domains. Doc. #12 at 661-662 (Tr. 652-53).

Plaintiff argues that the narrative portion of Dr. Campagna's 2019 consultative report assessed marked limitations in three of these domains, thereby satisfying the Listings criteria. *See* Doc. #12 at 1329-31 (Tr. 1320-22). In his report, Dr. Campagna states in the "Summary" of his evaluation that the combination of Plaintiff's deficits is expected to "markedly reduce his ability to independently manage changes in his environment to which he must adapt," and "markedly reduce his ability to consistently remember information and moderately reduce his

---

[2] The Commissioner incorrectly characterizes Plaintiff's argument as pertaining to the RFC determination. While Plaintiff does challenge the RFC findings, he principally argues that the record evidence established that the Listings at 12.10 and 12.11 had been met, which would have established the Plaintiff's disability without further analysis. *See* Doc. #19-1 at 3.

ability to apply it properly." *Id. at* 1331 (Tr. 1322). However, on the same page, Dr. Campagna offers his "Medical Source Statement," in which he opines that the only function domain in which Plaintiff will have marked limitations is in his interactions with others. In the remaining three areas of function assessment, he opined that Plaintiff would have only moderate limitations. Plaintiff argues that the assessment contained within the "Summary" is supported by the record evidence and should have resulted in a determination that Plaintiff met the applicable Listings.

The Court disagrees. The ALJ found—and the record supports—that the more structured, explicit, and succinct Medical Source Statement was consistent with the available record evidence. Indeed, the ALJ gave great weight to, and adopted, Dr. Feuss' criteria B findings provided at the December 2023 hearing. Dr. Fuess' testimony was consistent with Dr. Compagna's Medical Source Statement, to which the ALJ also gave great weight. Dr. Fuess' testimony alone provides substantial evidence for the ALJ's findings at Step Three.

In essence, Plaintiff asks this Court to excise one paragraph of a 5-page report, that is itself a tiny portion of a record spanning thousands of pages, and reverse the ALJ determination at Step 3. As the Second Circuit has emphasized, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). So long as the ALJ's conclusion is supported by substantial evidence—as it is here—this Court must defer.

### *Declining to Subpoena Dr. Campagna*

Plaintiff next argues that the ALJ erred by refusing to subpoena Dr. Campagna to testify regarding inconsistencies in his evaluation.[3] While claimants have a right to a "full and true

---

[3] Plaintiff also argues that the ALJ's refusal to subpoena Dr. Campagna deprived him of a full and fair hearing, and that his hearing was too short or conducted too quickly, in violation of his due process rights. But due process is

disclosure of the facts," *Richardson*, 402 U.S. at 410, the ALJ has broad discretion to determine when additional testimony is required to develop the record, *see Yancey v. Apfel*, 145 F.3d 106, 113 (2d Cir. 1998).

Here, at the December 23 hearing, Plaintiff's counsel cross-examined Dr. Fuess extensively, to include whether he considered Dr. Compagna's report in which additional marked limitations were identified. Indeed, Plaintiff's counsel asked Dr. Fuess, "So you're ignoring Compagna saying that the claimant has a marked reduction in his ability to remember information?" Doc. #12 at 797 (Tr. 788). Dr. Fuess answered "Yes . . . Not supported by . . . ." *Id.* After that exchange, the following exchange occurred:

> ALJ: And, Dr. Fuess, you earlier testified the claimant does not meet or equal a listing, correct?
> Dr. Fuess: That is correct, your Honor."
> ALJ: And you hold that opinion still?
> Dr. Fuess: I do, Your Honor.

*Id.* Plaintiff's counsel renewed the request to subpoena Dr. Compagna, which request was taken under advisement.

The ALJ was entitled to rely on the Medical Source Statement and on Dr. Fuess's expert testimony, which provided a consistent, well-supported interpretation of the record. *See, e.g.*, *id.*

---

satisfied so long as the claimant has a "meaningful opportunity to present his case and a fair determination of whether he was qualified for disability benefits." *Yancey*, 145 F.3d at 112-13. Here, Plaintiff was represented by counsel, was afforded multiple hearings post-remand, and submitted hundreds of pages of medical and educational records into evidence. The ALJ permitted the testimony of a neutral medical expert and considered all conflicting medical opinions in the record. While the ALJ denied the request to subpoena Dr. Campagna—reasoning that it was neither feasible nor necessary given the volume of the record and the presence of more recent medical assessments—this decision did not foreclose Plaintiff's ability to be heard. *Cf. Townley v. Heckler*, 748 F.2d 109, 114 (2d Cir. 1984) (explaining that remand is necessary where an ALJ entirely failed to appropriately develop the record by neglecting to provide claimant an opportunity to present rebuttal evidence). In light of the procedural opportunities provided and the comprehensiveness of the record, the Court is satisfied that the hearing met the requirements of fundamental fairness.

at 662-66, 767-69 (Tr. 653-57, 758-60). Moreover, Plaintiff was afforded multiple hearings and ample opportunity to submit evidence and argument.

While Plaintiff's counsel made repeated efforts to secure Dr. Campagna's testimony, the ALJ explained that doing so was "not feasible" and not necessary for a fair adjudication. *Id.* at 657 (Tr. 648). In his decision, the ALJ did not explain the basis for his determination that securing Dr. Compagna's testimony was not feasible, but that does not render his decision an abuse of his discretion or otherwise require this Court to remand the case for that purpose. The determination, while clearly frustrating to Plaintiff, does not rise to the level of abuse of discretion, nor was it legal error. *See, e.g.*, *Asije H. v. O'Malley*, 2024 WL 2131754, at *8 (D. Conn. 2024) ("The decision to grant or deny such a request is within the ALJ's discretion.").

### *The RFC Determination*

The ALJ concluded that Plaintiff had the residual functional capacity to perform work at all exertional levels, limited to simple, routine, and repetitive tasks with no public interaction and only occasional interaction with coworkers and supervisors. *See* Doc. #12 at 662-63 (Tr. 653-54).

This RFC is well supported. The ALJ relied heavily on the testimony of Dr. Fuess, who, after reviewing the complete record, concluded that Plaintiff had moderate limitations but retained the capacity for unskilled work in low-contact environments. *Id.* at 767-69 (Tr. 758-60). The ALJ also considered the consultative evaluations of Dr. Franklin-Zitzkat and the state agency psychologists, all of whom found that Plaintiff could understand simple instructions and adapt to routine work demands. *See id.* at 555-58, 119-24 (Tr. 546–549, 110-15).

While Plaintiff's limitations are significant and well-documented, substantial evidence supports the ALJ's conclusion that they do not preclude all work: At Step Five, for example, the

ALJ relied on vocational expert testimony to identify jobs available in significant numbers in the national economy that Plaintiff could perform, including cleaner and store laborer. Doc. #12 at 666-67 (Tr. 657-58).

This case presents a sympathetic portrait of a young man facing genuine cognitive and social impairments. Indeed, the Court agrees with Plaintiff that a contrary outcome would also have been supported by substantial evidence. But even so, the Court is not free to disregard the Commissioner's findings. *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017) (substantial evidence can support the Commissioner's findings even if there is the potential for drawing more than one conclusion from the record.) The ALJ carefully evaluated the record, resolved evidentiary inconsistencies, and applied the governing legal standards. His conclusion that Plaintiff retains the capacity to perform certain forms of simple work is supported by substantial evidence.

## CONCLUSION

For the reasons set forth above, the Commissioner's motion [28] to affirm is GRANTED. The Plaintiff's motion [19] for judgment on the pleadings is DENIED.

It is so ordered.

Dated at Bridgeport this 16th day of June 2025.

/s/ *Kari A. Dooley*
Kari A. Dooley
United States District Judge